I'd like to reserve four minutes for rebuttal. Okay, watch your clock. Excuse me? Watch your clock. Okay, thank you. May it please the court, my name is Hart Rabinovitch and I represent Plaintiff Erica Mitchell in this case. This case challenges the conduct of Defendant Appellee Specialized Loan Servicing, which after promising borrowers like Mr. Mitchell, who entered into forbearance agreements during the COVID pandemic, that it would specifically report their mortgage obligations as current to third-party credit report agencies, failed to do so, breaching both the statutory and contractual obligations that it had. In considering this case, it's important to start by considering the policy behind the new laws that were enacted in the first days of the pandemic. In March 2020, when the COVID pandemic first hit, Congress acted swiftly to enact the CARES Act, which amended the FCRA to specifically provide provisions for borrowers who were impacted negatively by the economic downturn that suddenly hit the country. The country was in a severe economic downturn that was unprecedented and unpredictable at that time, and it led to situations where borrowers like Mr. Mitchell were suddenly faced with loss of working hours, loss of income, and the inability to be able to continue their obligations. And as soon as he got to forbearance, he went to look to buy a new car on another mortgage. That was many months after that, when things started to recover in August. That's when he was still under forbearance. He was still in the forbearance term. He was still taking advantage of the protection that Congress accorded. Excuse me. He was still getting the benefit of his creditor telling everybody that he was current. What the creditor was not doing, it was not telling him, it was not telling the third-party credit report agencies that he was current. That statement appears. What you're complaining about is that it might be confusing because of another clause which suggested that they didn't have sufficient information. But what I'm trying to understand is that he gets this relief because he needs it, and then he goes and tries to buy a car, a fancy car, and get a loan, which presumably afterwards he would ask for the same relief. I think that's incorrect, Your Honor. He got the forbearance in March of 2020, or excuse me, April of 2020. It was renewed, and the term was through October, and he applied for a new mortgage after the problems with this mortgager, and he was trying to escape that by refinancing in March of 2021. At that time, there were additional misrepresentations. I'm sorry. When did he try to purchase the car? At the last few days of August 2020. 2020, not 2021. The mortgage that you mentioned when he tried to refinance was in March of 2021. And he was trying to buy this $96,000 car while he was still subject to forbearance? Yes. Now, under the CARES Act, you have to go back to the statute. How was he damaged, by the way? Excuse me? How was he damaged? He was damaged in terms of he was denied credit because the finance company, when he tried to apply for a loan, perceived his— With the car. Yes, pulled his credit report and told him he had mortgage late. That's what the car dealer told Mr. Mitchell. That's what he says. That's what he says he was told. That's what— That's hearsay to us. Well, there's also documents that show that as well. I'm looking at the documents where his loan was denied. Can you—I'm looking at Exhibit 45, for example. Where does it say missing payments or problems with his not being current? The way that a credit report works is that for each creditor, whether it's a mortgage company, a car company, a credit card, for each account that a borrower has, there's a specific chart that is— and this is for all three major credit reporting agencies. Could you answer Judge Wardlaw's question? Excuse me? Could you answer Judge Wardlaw's question? It was on the chart. I was trying to— It's not in the letters denying the loan. The inaccuracy appears on the credit report where, instead of using the code that said current, there was only one code that said current, they said unknown— I'm looking—my question is addressing causation. He may not have gotten his loan, and also it can also be true that I think this credit report could have reflected current more accurately. So the credit report, the way it looks with the D instead of the O, which you're claiming underbinds the statement that the mortgage is current. That could be true. And then he didn't get the loan for the car. That's true. But how do we know what evidence is there that they were linked? Mr. Mitchell was never late on his payments. No, but I'm asking about causation. We know he didn't get the loan. We also know this not perfect credit report was issued. But how do we know that the reason he didn't get the loan was because of this one notation on the credit report? We know that because he was denied the financing, and the people that he was dealing with at the car dealership told him that it was due to the perception of mortgage weights. Yeah, but that's not admissible. Well, do you have deposition testimony as to that or anything? We have Mr. Mitchell's testimony as to that. Do you have anything else? I mean, it's taking us a long time to get to this question. We have Mitchell saying he was told mortgage weight was the reason. That's hearsay. That's inadmissible. Do you have any admissible evidence that that was the reason? There are documents. There's correspondence. Back to the question. What are the documents, and what do those documents say? We're looking at Exhibit 44 and 45. That's where I'm trying to find causation because those are from U.S. Bank and Fifth Third Bank saying we're denying this request for a loan. What we have is we have correspondence, but I do not believe that is in the summary judgment record because the subpoena to the car dealership came during the proceedings before the order from the district court judge came at the end of December of last year. So you have no evidence of causation in the record? We have Mr. Mitchell's testimony, but I think that begs the question. The issue under the FCRA and the duty to correctly investigate and change reporting when there is the risk of adverse credit decisions does not require a finding of causation or a lost financing. It is the risk that is presented, whether it was to the car dealership or to future creditors. When there is an error made in reporting on a credit report and a consumer makes a complaint about that, there is a duty to investigate to avoid the risk of future denials or adverse credit decisions. And that is what Mr. Mitchell did. And the defendant here was unreasonable in failing to change its reporting so that Mr. Mitchell would not be subjected to those risks. I assume that the practice here of the defendant who is reporting to the credit agencies, the defendant is an intermediary between Mr. Mitchell and the three major credit reporting agencies. Yes. I assume this was a standard practice throughout this period. Is that right? It was their standard practice. And everyone in the credit industry would have understood that this was the standard practice, so everybody in the industry knew that the D meant that this was a forbearance. Let me clarify my prior answer because I think that was incorrect. It was the defendant's standard practice. It was not standard practice in the industry. For instance, Mr. Mitchell, this was his second loan. His other mortgage was through a company called UWM, United Wholesale Mortgage, who he also entered into a forbearance with at the exact same time, and UWM reported it differently and correctly so that on his credit reports it reflected that his loan was current. The defendant here reported it in a different manner using a different code, a code that did not mean current but meant no data, and that is what raised the red flags on his credit report and which violates the FCRA as well as the contract. I'm getting short on time here, so I would like to move on. Your principal prejudice is that he didn't get the car loan. He didn't get the loan to buy the car. Well, he didn't get the car loan, and it left him exposed to additional risks and still leaves him exposed to additional risks of credit going forward, and it's still not corrected. According to you, it left him exposed, but he didn't actually suffer. He did. He did not get the loan. If I jaywalk, I am exposing myself to being run over, but if I'm not run over, I'm not suing anybody for that. Your Honor, respectfully, that is not an element of an FCRA claim, and with regard to his subsequent refinance, he was denied on the refinance as well. You don't have to show injury to state a claim here? The issue on an FCRA claim is whether the furnisher, and recently the Ninth Circuit issued an opinion called Gross v. City Mortgage, 33F4-1246, that clarifies the obligations of a furnisher when faced with an FCRA complaint, and the elements of the claim is, one, there needs to be a prima facie showing of an inaccurate credit reporting, and that's what we've shown here. They did not follow the statute. The statute says current, not partially current. They did not fully report the account as current, and the second element of the claim is that the investigation has to be unreasonable, and here we've shown it was unreasonable because the defendant did not follow the statute, and the FPB guidance confirms that. The agency specifically issued guidance to furnishers on how to report these type of forbearances during the COVID pandemic. And could you answer Judge Wardlaw's question, which is, does he need to show damages? No. So all he needs to show is the violation? Yes. And if he shows the violation? The investigation was unreasonable because the purpose of the statute is prospective. It is to ensure that the borrower's credit report, when there is a dispute, is corrected and is accurate, and they have the benefit, so that they aren't faced with adverse risks. If I could move as I am running out of time. He said showing. What is he entitled to? He is entitled to a correction of his credit report, which the defendant here has refused to do, and that is unreasonable. That's all you're asking for is a correction of his credit report? The remedy sought is a correction of his credit report. If all we can show is a violation with no damages, does he get statutory damages? Is that the only thing he gets? He doesn't get actual damages or statutory damages if the conduct is shown to be reckless. That's a different question. If it's merely inaccurate, does he get statutory damages? If it's shown under the FCRA, the statute focuses on the conduct of the defendant. I asked a question. If it's merely inaccurate and not willful or reckless, does he get statutory damages? He doesn't get statutory damages if it is shown to be negligent. That was my question. Assuming that you can't show that, I don't ask you to concede, of course, is the only remedy he is then seeking is a correction of the report? The remedy is a correction to the report. Easy. I thought I saw something in the briefing somewhere that the bank or the service, the SLS has now actually stopped putting the D in instead of the O for periods of forbearance. They have continued, as far as I'm aware, throughout the record, they continued to use the D instead of the O to report these loans through the time this decision occurred a year later. And they continued to report incorrectly through the D code on the months after he resumed his payments. Mr. Mitchell, when he learned of this, resumed his payments in September of 2020, and for the period September 2020 through December 2020, four additional months, they reported him as the payments being unknown or no data when they clearly hadn't received the full payments. It wasn't completely wrong. It said that he was current. It just arguably, it might have caused confusion, but the letters that he got from the banks when it declined to finance his purchase of the Rover did not allude to that, did not allude to any problem about his loans not being current. The key factors that they referred to was that there was a bank prior bankruptcy in 2013. The length of time the accounts had been established, the proportion of loan balances to loan amounts is too high, time since recent account opening is too short, and too many inquiries last 12 months. They didn't say we don't want to finance a purchase of the car because you're not current on any loans. Your Honor, your first comment is exactly the point, that it caused confusion. It raises red flags. That is what the law protects against. I know, but it didn't hurt him. It did hurt him because he did not get the financing on the car. He did not get the financing on the refinance. There's no proof that that was the cause. On the financing, the defendant here wrote a verification of mortgage letter and submitted it to the new lender that said he was delinquent on five occasions. That was false. He had made all his payments. He was never delinquent on this loan. I don't know what loan you're talking about. I'm talking about the May 2021 or the March 2021 attempt to refinance the loan. Okay, go ahead. I see I'm out of time. I did not address the contract claim, but if I could, in 20 seconds, just address that the failure, the district court's failure to find consideration was erroneous. There was clearly a requirement to provide additional information, and that is what the defendant said was required. He just pressed a little button on the computer. There's no evidence that he spent hours gathering information. It does not have to be hours. It goes back to the proverbial peppercorn that we all learned about in law school. Any small inconvenience or task amounts to consideration, and this is what the defendant required and said was absolutely a precondition to obtain the forbearance, and he went through those steps, whether they took a minute, 10 minutes, or 10 hours. The case law that we cite in our brief shows that the law does not judge the quantum of consideration. It's the fact that he did it, and it took time, and it was something different than what the original mortgage contract said was required. It was something different, and he provided that, and I refer you to joint appendix of fact number 253, where it was undisputed by the defendant that Mr. Mitchell had to do that, and it was a requirement, and their declaration from their representative said that they relied on that information. So it was a requirement, and I point you to the Sutcliffe case that we cite in our brief. I see I'm out of time. Thank you, counsel. Thank you. Good morning, and may it please the Court. My name is Matt Moore. I appear on behalf of Specialized Loan Servicing, or SLS. I'm going to start to quickly address a question, Judge Wardlaw, that you had, and then I want to talk about the reporting itself. You were asking if it was still being reported, the forbearance. SLS did make a correction for the month of December after the forbearance was over to put the zero instead of the D because the forbearance was over. But the other important point is the payment history profile only goes back for 24 months. So as of now, it's all disappeared. So it's all changed. Right. It just wouldn't appear. And he hasn't been in forbearance during the last 12 months. Correct. So it would be all zeros now. Yes. Or if it were corrected, it would be correcting something that's not publicly available. That's also correct. I get it. So the key issue in this is... Well, it's the Metro 2. And so the way the Metro 2 is set up, that that payment history profile goes back in time and then after a certain amount of time disappears. I don't think I answered your question. No. I'm just wondering if SLS still puts in D during periods of forbearance for persons who take advantage of the CARES Act. If there's anyone left, and I don't know one way or the other, they would still put D because under the statute and under the industry guidelines, that's the appropriate way to do it. And so when you look at the statute, it says if a person's in an accommodation due to COVID-19, you report that person as current. That's all it says. So if you then go to the Metro 2, which is what SLS uses, SLS reported the account status field as 11, current account. The account status is the status code that properly identifies the current condition of the account as of the date of the account information. So that's a quote from a supplemental excerpt of record 355 from the Metro 2 guidelines that describes what the account status is, and SLS was reporting the account status as current. The payment history profile, if you look at the supplemental excerpt of record 362, where it's describing what the, I'll call it the PHP, is, is it starts by saying the account status contains the status of the account. So even when you're looking at this PHP, it says if you want to know the status of the account, you look at the account status, and that is where SLS reported current. You then see that the statute just says report current, which is what we did. So then we can take a look also at the industry guidance. The Consumer Data Industry Association, who puts out the Metro 2, put out a CARES Act reporting guidance, and this is found at the supplemental record at 120 and 121, and this is where CDAI is talking about how you report these COVID accommodations. It says to report the account status code as 11, which is exactly what SLS did. For the payment history profile, it provides two options. It says you can report the value zero for the months during the accommodation, or as an option, increment the payment history profile with value D during the accommodation period, and the D means no data, and that's what SLS reported, and that's in line with what the industry guidance is, and it's also the most accurate way to report because there's no payments due during these months. Now, importantly, when Mr. Mitchell made payments, SLS reported that those payments were made to the credit reporting agencies. It still left the D in there because no payments were due for that month, but you can see that those payments are actually on the credit reports. In addition to the Consumer Data Industry Association guidance, TransUnion also put out reporting guidance for COVID accommodations, and that's on the record at Supplemental Excerpt of Record 126, and there for the PHP, it says you can report zero or six. So again, I'm sorry, zero or D for no data. So again, report account status 11 and reporting the D is okay, which is what SLS did. The third place that you can see that SLS properly reported, and as Judge Corman was asking about and Judge Wardlaw, is in the credit denials themselves, and so let's go to the timeline really quick about how we got here. On December 4, 2013, Mitchell filed for bankruptcy. His credit reports all show that that bankruptcy is going to stay on his credit until November or December of 2023. Mitchell obtained this second mortgage loan in October of 2019. SLS began servicing it in January of 2020. April 2020 is when Mitchell first asked for the forbearance accommodation. In June, on June 24, he called SLS and said he wants to extend it. They asked him if he was still suffering a financial hardship. He said he was. About 10 days later, he obtained a $15,000 personal loan from HSBC, and then in August, I believe it was 20 or 21st, he then went to buy a fancy Range Rover for nearly $100,000 while he's in the middle of a forbearance and after he just obtained another personal loan. Now, when he was denied, he blamed SLS, but that doesn't match up with what the bank said. The credit denials all listed as reason number one, Mr. Mitchell's bankruptcy. The U.S. Bank letter supplemental record 101 listed the factors adversely affecting his credit score. Number one, derogatory public record or collection filed. That's the bankruptcy. Length of time accounts have been established. Next reason, proportion of loan balances to loan amounts is too high. How do we know that derogatory public record or collection is the bankruptcy? If we look at the credit reports, there is a section for public records and the bankruptcy appears on it and nothing else appears on it. Okay, so it wouldn't be the credit report itself having the D instead of the O? Correct. Yes, that would not be the D instead of the O because there's nothing. A credit report is not a public record. The public record, if you look at the credit reports, specifically talks about public records being things like bankruptcies or judgments. Does he have a credit report in this record? He does. I believe there's excerpts starting at 190 of the supplemental excerpt. But to the same question, we actually don't know what credit reports U.S. Bank or Fifth Third Bank looked at. It would be one of the three, right? Well, we know that one of them was from TransUnion, but we don't know what they were actually looking at because Mr. Mitchell had the option within 60 days after the denial to seek more information from these banks about why it was denied, and he did not do so. And Mr. Mitchell did not take any discovery from these banks about what it is that they were actually looking at. So all we know is what's in the two letters, so I think 44 and 45, but supplemental 101 to 103. So then if you look in Mr. Mitchell's credit reports themselves, TransUnion, and these are ones that he pulled himself, not that the banks looked at, but TransUnion says satisfactory account, and it lists SLS in the accounts that are reported with no adverse information. And it specifically says that TransUnion is reporting his account as a current account. Experian shows that Mitchell was never late, and Equifax reports Mitchell as pays as agrees. It's also important to note that in March of 2021, Costco also denied Mr. Mitchell for credit, and the specific reason it provided was because of his bankruptcy. Another point is opposing counsel mentioned the verification of mortgage. That is not credit reporting. That was not provided to a credit reporting agency. So if we're going to take all this and look at the Fair Credit Reporting Act, the first element is do we have an inaccuracy on the credit report, and we do not. It accurately says that he's current. To be inaccurate, information must either be patently incorrect or misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. So it's not patently incorrect. It says that he's current, and it's also not misleading because it shows that his account status is current, and if he makes payments, it also shows up. It also shows that there was no amount passed due. Given that the statute only says current and that the industry guidance say it's okay to report the D, we could see that SLS did not act negligently. The standard for negligence is objectively unreasonable interpretation of the statute. Given that it only says current and that SLS, in fact, looked at the industry guidance that said this was okay, we cannot say that it's objectively unreasonable. With respect to the contract claim, a piece of the trial court's decision that I did not agree with was that it said something to the effect that we weren't arguing that because we reported correctly under the FCRA that the breach of contract claim failed, and we actually did say that. We say in sum because our reporting was correct, all of Mr. Mitchell's claims failed, and so that goes to the same issue that the breach of contract fails because we were reporting correctly. So he has no damages, right? That's correct. You still have to prove damages in order to prevail on a breach of contract action. That's exactly right. And I think that the court was correct that there is no consideration. I think that you can also look with respect to the breach of contract claim and see that it's also preempted. I know that there's a lot of debate about what the different preemption statutes mean, the two, but here where we have an amendment to 1681SA to say that if you give an accommodation, this is how you report, that is clearly under, that's clearly covered by the statute now. And so SLS was obligated to report that way, and so when you look at either 1681T or 1681H, it's preempted. And I think 1681TB1F is the easiest way. It says no requirement or prohibition may be imposed under the laws of any state with respect to any subject matter regulated under 1681S2, and that is where the COVID accommodation new requirements were added. So looking at it, Congress is saying that any state law claims are preempted. All right. Thank you, counsel. Thank you. You're all out of your time, Mr. Rabinovich. I'll give you one minute. All right. I just want to refocus the panel on the main thing that is at issue here, which is the statute. The statute says current. It doesn't say you report as partially current. It says you report as fully current, and that's exactly what the guidance from the CFPB. Even assuming you're right, and I'm not saying that you are or not, even assuming that you're right, that O should have been reported rather than D. Given that the relevant period is now no longer reflected, it sounds as though injunctive relief is not needed, and that leaves you with damages. Damages requires either willfulness with no proof of damages or negligence with proof of damages. So am I summarizing where we are? Well, that is not in the record anywhere about the extent of the reporting of the credit. Assuming for the moment that it's true, am I right in saying that that's where we are? What we would have is our fact issues based on whether this was willful or negligent conduct. Okay, so that's where you are. Okay, I get it. Case law supports the fact that a long delay in correcting something, which they still did not do until well into this lawsuit, satisfies the standard for willful or reckless conduct under the FCRA. All right, thank you, Counsel. Mitchell v. Specialized Loan Servicing will be submitted.
judges: WARDLAW, FLETCHER, Korman